1
2
3
4
5
6
7

8                  UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ANGELICA G. GONZALES,<br><br>                              Plaintiff,<br><br>v.<br><br>ELAINE L. CHAO, Secretary of the<br>Department of Transportation,<br>                              Defendant. | Case No.: 20-CV-0530-GPC<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IFP; AND**<br><br>**(2) DENYING MOTION TO APPOINT COUNSEL.**<br><br>**ECF Nos. 2, 3.** |

18        Before the Court are Plaintiff Angelica G. Gonzales' ("Plaintiff") motions to

19   proceed *in forma pauperis* ("IFP") and for appointment of counsel. ECF Nos. 2, 3.

20   Proceeding *pro se*, Plaintiff has filed a Complaint alleging employment discrimination, a

21   hostile work environment, and retaliation against Defendant Elaine L. Chao in her

22   capacity as the Secretary of the United States Department of Transportation

23   ("Defendant"). ECF No. 1.

24        For the reasons below, the Court **GRANTS** Plaintiff's IFP motion. The Court

25   concludes that Plaintiff has adequately demonstrated indigence and that Plaintiff's

26   allegations of employment discrimination, a hostile work environment, and retaliation are

27

28

sufficient at this stage. The Court also **DENIES** Plaintiff's motion requesting the appointment of counsel.

**I.    Background.**

    **A.    Allegations of the Complaint and Exhibit.**[1]

    Plaintiff was employed as a "Border Inspector GS-9" by the Department of Transportation, Federal Motor Carrier Safety Administration, in Calexico, California ("the Agency") from November 2008 through May 2014. ECF No. 1 at 2. Plaintiff describes multiple incidents during this period that inform this action. ECF No. 1 at 2.

    In November 2008, the Plaintiff's supervisor, John A. Urias ("Urias"), instructed Plaintiff to remove a jacket because it lacked the Agency's logo. ECF No. 1-2 at 2. Approximately one week later, Plaintiff observed a male Border Inspector wearing an identical jacket without a logo, and he confirmed that he did so regularly. *Id*. Urias eventually provided Plaintiff a new jacket. *Id*.

    In 2009, Plaintiff requested assistance from Urias in completing her first assignment. Urias provided a sample document and asked another employee to assist Plaintiff instead. *Id*. Later, Urias requested Plaintiff change her phone number because the Agency incurred long distance charges in calling that number and calls to the number

---

[1] The allegations summarized in this Section are drawn, in part, from the Exhibit filed alongside Plaintiff's Complaint. (ECF No. 1-2. The Court finds that Plaintiff's Exhibit, which is attached to the Complaint, has been incorporated by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). As Plaintiff's claim follows from an administrative decision by the EEOC, and the Exhibit contains records pertaining to that decision, the Court finds that this "document forms the basis of the plaintiff's claim." *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). This occurs routinely in matters arising from EEOC decisions. *See Lenk v. Monolithic Power Sys. Inc.*, No. 19-CV-03791-BLF, 2020 WL 619846, at *8 (N.D. Cal. Feb. 10, 2020) (observing that a court "may take judicial notice of [] EEOC filings or, alternatively, may consider them under the incorporation by reference doctrine"); *see also, e.g., Borreggine v. Prokarma, Inc.*, No. C-18-0336-RSM, 2018 WL 3217438, at *2 (W.D. Wash. June 29, 2018) (incorporating by reference documents relating to an EEOC proceeding on a motion to dismiss); *Abdullah-El v. Bon Appetit Mgmt. Co.*, No. C15-1946JLR, 2016 WL 1756630, at *2 (W.D. Wash. May 3, 2016) (same)

frequently dropped. *Id*. Urias also denied Plaintiff's request to use her personal vehicle for work-related travel. *Id*. He expected employees to use government vehicles and wanted them to travel together on group assignments. *Id*.

On April 6, 2010, Plaintiff received an "Achieves Results" in her mid-point progress review, the third level of five. *Id.* When Plaintiff asked how she could improve, Urias suggested she improve her attendance. *Id.* Plaintiff also alleges that she "performed [her] Border Inspector duties acceptably" and that there were "no reported problems concerning [her] work performance." ECF No. 1 at 2.

In June of 2010, Urias received a speeding ticket while traveling with Plaintiff and her coworkers. ECF No. 1-2 at 2. Urias revealed that Plaintiff also had received a ticket and asked her how to sign up for traffic school. *Id*. While driving a few days later, Plaintiff asked Urias to stop the vehicle so that she could use the restroom. *Id*. Urias did not do so until Plaintiff asked a third time and other employees in the vehicle also said they needed to stop. The Complaint's incorporated Exhibit indicates that, sometime in June, Urias said that Plaintiff was "getting old" – Plaintiff was born 1971 – and should marry before she became too old to find a partner. ECF No. 1-2 at 95.

On August 26, 2010, Plaintiff asked Urias why he had not responded to her calls or emails. ECF No. 1-2 at 3. Urias responded that he was busy and that he did not want to call her phone because doing so incurred long-distance charges for the Agency. *Id*.

In February 2011, Plaintiff requested leave on a Saturday with about two weeks' notice. *Id.* Urias declined the request and told Plaintiff to ask her coworkers if they would be willing to switch days with her. *Id*.

In April 2011, Plaintiff requested a "Compressed Work Schedule." *Id.* Urias instructed Plaintiff he would approve the request only if she refrained from being tardy to work for a three-month period. *Id.* Urias granted Plaintiff's request in May. *Id*.

In June 2011, Plaintiff requested that Urias issue her a specific government vehicle and specific equipment for work-related travel. *Id.* Urias declined the request, asserting that the equipment was not necessary. *Id.*

In July 2011, Plaintiff submitted a travel voucher to Urias for work-related training. *Id.* Urias refused to approve Plaintiff's travel voucher until she removed a fifty-cent charge for personal calls, stating that personal calls were not an authorized expenditure. *Id.* That same month, Urias approved a male worker's travel voucher without asking him to make any changes. *Id.* That voucher was more expensive and included a hotel tax that Urias deemed an authorized expense. *Id.*

In December 2011, Urias scheduled Plaintiff to work every Saturday. *Id.* She requested multiple times that she not be assigned any Saturdays. *Id.* Urias revised the schedule but required Plaintiff to work the first Saturday of the month. *Id.* Later that month, Plaintiff requested to switch her work hours from 12:30 p.m. to 9:00 p.m. to a 9:30 a.m. to 6:00 p.m. schedule for childcare reasons. *Id.* Urias denied Plaintiff's request because this schedule was unusual and was only temporarily allowed on rare occasions. ECF No. 1-2 at 3–4.

On February 7, 2012, Plaintiff and several coworkers attended a meeting. As Plaintiff sat, her chair moved. ECF No. 1-2 at 4. She fell to the ground, injuring her neck, left shoulder, lower back, and knee. *Id.* An Auditor Supervisor standing behind her asked her if she was okay. *Id.* Plaintiff heard other coworkers laugh, which caused her to feel embarrassed, and one yelled "if [the supervisor] wouldn't have moved the chair away from [Plaintiff], [Plaintiff] would not have fallen." *Id.* The supervisor told the employee who yelled not to say that. *Id.* Urias later investigated the incident and concluded that no one saw the supervisor or anyone else move Plaintiff's chair. *Id.* at 4–5. Plaintiff asked for, and obtained, a form to file a grievance against Urias. *Id.* at 5.

On February 24, 2012, Plaintiff learned that Urias had not provided necessary medical leave documents to verify Plaintiff's medical leave status and process her claim.

*Id.* at 4. Urias claimed that he did not know it was his responsibility to do so and thought instead that the employee was to provide those documents. *Id.* A male employee testified that, in 2011, he applied for worker's compensation benefits and had no trouble with documentation. *Id*.

On May 5, 2012, Plaintiff's physician released Plaintiff to return to full duty with no restrictions. ECF No. 1-2 at 81.

On June 3, 2012, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 1-2 at 5.

On June 5, 2012, Plaintiff requested an assignment in Yosemite. *Id.* Urias denied this request and stated he had already selected the team for that assignment. *Id.*

On August 2, 2012, Plaintiff requested that the Agency install an air-conditioned trailer for her use while conducting inspections at a port facility. *Id.* Plaintiff stated that it was necessary because the extreme weather conditions were a health hazard. *Id.* Urias instructed Plaintiff to submit a doctor's note regarding her inability to work in hot weather. *Id.*

On August 7, 2012, Urias instructed Plaintiff to enroll in a training class before leaving for the day. *Id.* Plaintiff left without enrolling, telling Urias that she needed to review the relevant emails before doing so. *Id*. Plaintiff was enrolled in the training on or about August 14, 2012. *Id.*

On August 8, 2012, Plaintiff again asked to modify her 12:30 p.m. to 9:00 p.m. schedule to a 9:30 a.m. to 6:00 p.m. schedule that week. *Id.* Urias granted her request because there were several special operations that required adjustment of the schedules that week. *Id.*

In September 2012, Plaintiff again requested that she be assigned to a special detail in Yosemite. *Id.* Urias denied the request because Plaintiff requested to communicate via email and because Plaintiff had not complied with his instruction to register for a class on August 7, 2012. *Id.*

1    October 3, 2012, Urias issued a Letter of Reprimand to Plaintiff for failing to

2    follow his instructions with respect to registering for the training class on August 7, 2020.

3    *Id*; ECF No. 1-2 at 7.

4    In February 2013, Border Supervisor Isabel Lopez ("Lopez") placed Plaintiff on

5    leave restriction. ECF No. 1-2 at 67–70. The letter notifying Plaintiff of the leave

6    restriction stated she had used an excessive amount of leave the previous year. *Id*. at 67.

7    On May 2, 2014, Plaintiff was involved in an accident with a government vehicle

8    she drove on the job. ECF No. 1 at 2. Plaintiff explained that "the brakes failed to operate

9    and steering wheel locked while traveling in the government work vehicle." *Id.* Plaintiff

10    stated that she suffered a traumatic experience and developed Post-Traumatic Stress

11    Disorder ("PTSD") from the incident. *Id*.

12    On July 21, 2014, Supervisors Lopez and Urias "wrongly accused" Plaintiff of

13    "threatening to cause them harm by making inappropriate statements" to a coworker.

14    ECF No. 1 at 2. The coworker notified Plaintiff's supervisors that Plaintiff had

15    "expressed age towards [them] and that [Plaintiff] presented suicidal and homicidal

16    ideation." *Id.* More specifically, Plaintiff was accused of saying, "[i]f I had a gun I would

17    shoot them," and "shooting them would not cause enough suffering; they should

18    experience the same pain and suffering I am." ECF No. 1-2 at 35. After this incident,

19    Plaintiff was placed on administrative and "directed to stay away from the office until

20    further notice." ECF No. 1 at 2.

21    On August 25, 2014, Lopez obtained a civil harassment restraining order in

22    Imperial County Superior Court against Plaintiff. *Id.* Supervisor Lopez "determined that

23    [Plaintiff's] statements were inappropriate and were perceived as a threat to the safety

24    and welfare of [Plaintiff's] supervisors and coworkers." *Id.*

25    On January 5, 2015, the Agency proposed removing Plaintiff from her position

26    based on her Supervisors' allegations. *Id.* Plaintiff was then placed on Administrative

27    leave for approximately one year. ECF No. 1 at 3.

28

On April 18, 2015, Plaintiff received a letter from the Agency informing her that she was dismissed from employment for "[m]isconduct." *Id.*

On June 10, 2015, Plaintiff filed an appeal with the United States Merit System Protection Board and alleged that she was "wrongfully terminated." *Id.* Plaintiff was still under treatment for PTSD and waiting for "approval of a medical compensation or retirement." *Id.*

Plaintiff further alleged that her supervisors' conduct was retaliatory. Plaintiff alleged that, prior to filing an Equal Employment Opportunity Commission ("EEOC") complaint, her supervisors "had targeted [Plaintiff] for anything they could sanction [her.]" *Id.* Then, following her complaint, Plaintiff was placed on leave restriction "immediately" and, as a result, was "denied most medical leave because of lack of detail information from [her] doctors." *Id.* She was also placed "in AWOL status and leave without pay for not providing such detailed medical documentation . . ." *Id.* Plaintiff also alleged that Urias would "constantly harass" Plaintiff by calling her at inconvenient times to question her about medical documentation. *Id.* Plaintiff maintains that nobody else in her office received such "sanctions or reprimands." *Id.*

In November 2015, the U.S. Merit Board reviewed Plaintiff's case. *Id.* The Board ruled in her favor and ordered the Agency to return her benefits "with a lump sum of paid medical leave." *Id.* The Agency agreed to change her status to "medically retired for PTSD." *Id.*

Plaintiff states that, during the time following her Supervisors' allegations, she became homeless. *Id.* She explains that her father became "very ill" and so her family was unable to help support her mortgage and insurance bills. *Id.* She, moreover, did not have a source of income to provide for monthly expenses. *Id.*

### B.  Procedural Background.

As noted, on June 3, 2012, Plaintiff filed an EEOC Complaint alleging that the Agency was guilty of discrimination when it subjected her to a hostile work environment

20-CV-0530-GPC

on the basis of her sex, age, and disability. ECF No. 1-2 at 5. On September 23, 2013, the Agency filed a motion for summary judgment and Plaintiff did not file an opposition. *Id.* at 73. Then, on May 8, 2018, the Administrative Judge ("AJ") assigned to Plaintiff's Complaint issued a decision granting summary judgment and denying Plaintiff's claims. *Id.* at 5, 72–99.

On July 12, 2018, Plaintiff filed an appeal with the EEOC of the AJ's decision. *Id.* at 1. On December 20, 2019, the EEOC affirmed the AJ's final order. *Id.* at 1–15. The EEOC's decision informed Plaintiff that she had 90 days to file a civil suit and, on March 20, 2020, Plaintiff filed the complaint in this matter *pro per. Id.* at 13; ECF No. 1.

## II.     Legal Standard.

### A.     Motion for IFP.

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400. *See* 28 U.S.C. § 1914(a). "An action may proceed despite failure to pay the filing fees only if the party is granted IFP status." *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

The law requires that a complaint filed by any person seeking to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent it "fail[s] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."). Section 1915 mandates that a court reviewing a complaint filed pursuant to the in forma pauperis provisions of section 1915 make and rule on its own motion to dismiss before directing that the complaint be served by the U.S. Marshal pursuant to Federal Rule of Civil Procedures, Rule 4(c)(2). *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the sufficiency of the complaint. *See* 28 U.S.C. § 1915(e)(2)(b)(ii); *see also Fridman v. City of New York*, 195

20-CV-0530-GPC

F. Supp. 2d 534 (S.D.N.Y. 2002). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," she must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

The Court must accept all factual allegations pleaded in the Complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). In addition, the Court has a duty to liberally construe a *pro se* plaintiff's pleadings. *See Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* civil rights complaint, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Motion to Appoint Counsel.

The appointment of counsel is up to the district court's broad discretion and is granted only in exceptional circumstances. *See* U.S.C. § 2000e-5(f)(1); *see also Ivey*, 673 F.2d at 269 ("There is no constitutional right to appointed counsel for employment discrimination claims . . . and the trial court's discretion under § 2000e–5(f)(1) in determining whether counsel should be appointed is broad, the appellate court's review being limited to the question of whether the trial court abused its discretion"). In employment discrimination claims, as in all civil litigation, there is no constitutional right to appointed counsel. *Moore v. Sun-Beam Corp.*, 459 F.2d 811, 829 (5th Cir. 1977).

The Court considers three factors when assessing a request for the appointment of counsel: "(1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's claim." *Johnson v. U.S. Treasury Dep't,* 27 F.3d 415, 416–17 (9th Cir. 1994) (quotation omitted).

In addition, a court considers whether the complainant has demonstrated "exceptional circumstances." *Palmer v. Valdez,* 560 F.3d 965, 970 (9th Cir. 2009). A finding of exceptional circumstances requires consideration of both the "likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (quoting *Weygandt v. Look,* 718 F.2d 952, 954 (9th Cir. 1983)). "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

## III.   Analysis of Motion to Proceed IFP.

### A.   Plaintiff's Finances.

Here, Plaintiff declares that she has been unemployed since 2014. ECF No. 3. Her husband is unemployed as well, and the two live off social security and retirement benefits, which total $3,129 dollars a month. *Id*. at 2. Plaintiff lists three dependents – her son, sister, and father – and estimates that her monthly expenses and payments either match or exceed her monthly income. *Id*. at 3–5. Plaintiff reports that between her and her spouse, they have a total of $40 in the bank, and so have no savings on which to depend in the event of unanticipated expense. *Id*. at 2. The Plaintiff's vehicle and home are not valued as to be deemed assets from which she could reasonably draw.[2] *Id*.

---

[2] However, the Court notes that Plaintiff's Application to Proceed IFP values her home at an improbable value of $190. Though the court has authority to request additional financial information under California Rule of Court 985(b), it declines to do so now as it seems immaterial to the Court's decision.

Plaintiff's submissions indicate that she lacks the financial resources to pay the fees associated with this action. As such, the Court hereby **GRANTS** Plaintiff's request to proceed IFP.

### B.    Sufficiency of the Complaint.

A court must *sua sponte* dismiss any IFP pleading which is frivolous or malicious, fails to state a claim, or seeks damages from defendants who are immune. *See* 28 U.S.C. § 1915(e)(2)(B). Here, Plaintiff's Complaint asserts three claims in violation of Title VII of the Civil Rights Act of 1964: (1) disparate treatment on the basis of sex, (2) a hostile work environment, and (3) retaliation.[3] For the following reasons, the Court finds that Plaintiff's allegations as to each claim are sufficient under § 1915(e)(2)(B).

### 1.    Disparate Treatment / Discrimination.

Title VII provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove unlawful discrimination through "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the employer's conduct. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

To establish a prima facie case for disparate treatment, a plaintiff must first allege "that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis,* 225 F.3d

---

[3] Plaintiff's pro se complaint does not expressly distinguish between her claims. However, Plaintiff offers the following introductory phrase to her allegations, which forms the basis of the Court's inference as to the claims alleged therein: "During this time I was subject to a *hostile work environment*. Upon filing an EEO complaint, alleging *discrimination on the bases of sex* on or about June 3, 2012; I experienced work *retaliation* from my immediate work supervisors John A. Urias and office supervisor Isabel Lopez." (ECF No. 1 at 2) (emphasis added).

1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973)). Then, under the *McDonnell Douglas* framework the burden of production shifts to the employer to show non-discriminatory intent. *Id.*

However, "[t]he prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136 (9th Cir. 2019) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). The prima facie case only "relates to the employee's burden of presenting evidence that raises an inference of discrimination." *Swierkiewicz*, 534 U.S. at 510. Consequently, the ordinary rules for assessing the sufficiency of a complaint apply, and a court need only consider whether plaintiff has satisfied his burden in stating a claim for which relief can be granted. *Id.* at 511; *accord Burton v. See's Candy Inc.*, No. 20-CV-00564-JCS, 2020 WL 4340174, at *3 (N.D. Cal. July 28, 2020); *Ly v. Paragon Tech. & Dev. Inc.*, No. CV-18-02465-PHX, 2019 WL 4394536, at *3 (D. Ariz. Sept. 13, 2019).

Here, Plaintiff adequately pleads that she is a member of a protected class on the basis of gender. ECF No. 1 at 1. Also, in alleging that Plaintiff "ha[s] performed [her] Border Inspector duties acceptably and there are no reported problems concerning [her] work performance," ECF No. 1 at 2, Plaintiff adequately pleads that she is qualified for her position. *See Ross v. Brooks Coll.*, 339 F. App'x 749, 750 (9th Cir. 2009) (finding plaintiff satisfied this prong in reliance on "evidence that management-level employees offered positive assessments of his performance and capabilities, and evidence that the [employer] temporarily assigned him to perform some of the functions of the" position).

As to the third and fourth factors – whether Plaintiff alleges an adverse employment action to which similarly situated individuals outside her protected class were not subjected – the Court's assessment turns on the precise allegations at issue. Under Title VII, an adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (brackets and ellipsis omitted). This may include an

12

1   employer's affirmative actions as well as the denial of a material employment benefit or

2   opportunity that was otherwise available. *See Breiner v. Nev. Dep't of Corr.*, 610 F.3d

3   1202, 1208 (9th Cir. 2010). Moreover, the Plaintiff must allege that "similarly situated

4   men were treated more favorably, or her position was filled by a man." *Villiarimo v.*

5   *Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quotation omitted).

6         Looking to the myriad factual allegations in the Complaint and Exhibit, the Court

7   first observes that Plaintiff refers to two instances where it might be argued that a male

8   employee was treated preferentially, but where the result does not amount to an adverse

9   employment action. First, Urias required Plaintiff to change jackets but let a male

10  employee wear an identical one. ECF No. 1-2 at 2. While the male employee may have

11  been "similarly situated," this situation had no adverse effect on her employment. *Davis*,

12  520 F.3d at 1090 (holding that a plaintiff being given inferior vest and gloves did not

13  "materially affect the terms and conditions" of her employment because her ability to

14  work was not affected). Additionally, Urias refused to approve Plaintiff's travel voucher

15  because it included a fifty-cent charge for personal calls, yet he approved a male

16  coworker's more expensive hotel tax. ECF No. 1-2 at 3. Assuming *arguendo* that this

17  male employee would be considered similarly situated, *but see Peterson v. Hewlett-*

18  *Packard Co.*, 358 F.3d 599, 605 (9th Cir. 2004) (claim failed where plaintiff did not

19  present any evidence that another group of employees engaged in acts sufficiently similar

20  to his own communications), a fifty-cent travel charge would also not be considered an

21  adverse employment action, as it does not "materially affect the compensation, terms,

22  conditions, or privileges of employment." *Davis*, 520 F.3d at 1089.

23        Likewise, Plaintiff's Complaint and Exhibit refer to five other instances where the

24  opposite is true: the conduct alleged arguably rises to the level of an adverse employment

25  action, but Plaintiff fails to identify other, similarly situated employees for comparison.

26  First, the record suggests that Plaintiff's supervisor changed her schedule without notice.

27  ECF No. 1-2 at 2–5; *cf. Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th

28

13

Cir. 1998) (relying, in part, on plaintiff's allegation that she "reported to work and found she had not been scheduled to work"). Second, the record also suggests that Plaintiff's supervisor ignored her attempts to reach him by phone and email. ECF No. 1-2 at 3; *cf. Davis*, 520 F.3d at 1090 (concluding that a plaintiff's allegation "that she was sometimes ignored by supervisors when she would attempt to communicate with them via radio" was, under the circumstances, more than mere "ostracism" and indicated disparate treatment). Third, Plaintiff's supervisor gave her a poor performance review for tardiness and letter of reprimand for failing to complete a training course. ECF No. 1-2 at 5, 112. That could amount to an adverse employment decision if "undeserved" as Plaintiff alleges. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Thomas v. Spencer*, 294 F. Supp. 3d 990, 999 (D. Haw. 2018) ("a letter of reprimand may constitute an adverse employment action; however, … the court must consider whether there was any employment consequence as a result of the reprimand letter"). Fourth, Plaintiff was placed on administrative leave. ECF No. 1-2 at 55. And, the Ninth Circuit has found that an administrative leave is an adverse employment action because "the general stigma resulting from placement on administrative leave [could be] reasonably likely to deter employees from engaging in protected activity." *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) (quotation omitted). Lastly, Plaintiff points to her dismissal, ECF No. 1, and, "of course, termination of employment is an adverse employment action." *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

To establish that the above five allegations present claims under *McDonnell Douglas*, however, Plaintiff must identify an employee who did not suffer the same adverse action and who is similar to Plaintiff in all material respects. In assessing the similarity of another employee, the "Ninth Circuit looks to factors such as whether the [individual] and the plaintiff were subject to the same policies, worked at the same jobs, committed similar violations, and had similar disciplinary records." *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1311 (W.D. Wash. 2014) (citations omitted); *see*

*also Collins v. Potter*, 431 Fed. Appx. 599, 600 (9th Cir. 2011) (insufficiently similar because not subject to same agreement and different disciplinary histories)). Here, Plaintiff has not alleged that any other similarly situated employee was treated differently on the basis of gender with respect to these five allegations.

The above allegations notwithstanding, Plaintiff points to one instance whose corresponding factual allegations, if true, appear to satisfy both the third and fourth prongs of *McDonnell Douglas*. Specifically, Plaintiff alleges that Urias failed to provide the proper medical leave documents for her workers' compensation benefits. ECF No. 1-2 at 4. At least one court has found that such conduct may rise to the level of an adverse employment action. *Corneveaux v. CUNA Mutual Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996) (a plaintiff demonstrated adverse employment action by showing that her employer "required her to go through several hoops in order to obtain her severance benefits"). And, Plaintiff alleges that a male employee had no trouble getting his paperwork from the same supervisor in an analogous situation. ECF No. 1-2 at 4. The Court, moreover, is mindful of Plaintiff's other allegations that her supervisor may have acted with discriminatory intent before. *See* ECF No. 1-2 at 2–3 (allegations of differential treatment as to the Agency's jackets and travel vouchers).

Thus, because Plaintiff pleads that she is a qualified member of a protected class, was subject to an adverse employment action, and that other similarly situated employees were treated more favorably, the Court concludes that Plaintiff's allegations of disparate treatment are sufficient to survive the Court's *sua sponte* review. In reaching this conclusion, the Court construes Plaintiff's *pro se* Complaint liberally. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

## 2. Hostile Work Environment.

To establish a prima facie case for hostile work environment, Plaintiff must show that "(1) Defendant subjected [her] to verbal or physical conduct because of [her] protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was

20-CV-0530-GPC

sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Gipaya v. Dept. of the Air Force*, 345 F. Supp. 3d 1286, 1297 (D. Haw. 2018) (citing *Surrell v. Cal. Water Servs. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008)); *accord Simmons v. Modly*, No. 19-CV-1448-JLS, 2020 WL 4784739, at *4 (S.D. Cal. Aug. 18, 2020).

Plaintiff alleges she was "subjected to a hostile work environment." ECF No. 1 at 2. As part of her allegations, Plaintiff describes allegedly disparaging comments made by other employees of the Agency. ECF No. 1-2 at 2–5. These comments include that Plaintiff was "getting old" and should marry before she became too old to find a partner. ECF No. 1-2 at 95. Plaintiff also references other employees' laughter following an incident where a visiting supervisor allegedly pulled out a chair from under her. ECF No. 1-2 at 4. And, Plaintiff observes that her supervisor would "constantly harass [her] via phone calls," even after she was placed on medical leave. ECF No. 1 at 3. Though sporadic commentary alone does not create a hostile work environment, *see EEOC v. Prospect Airport Servs., Inc*., 621 F.3d 991, 998 (9th Cir. 2010) ("[a] violation is not established merely by evidence showing sporadic use of abusive language, gender-related jokes, and occasional teasing"), Plaintiff's allegations here evince ongoing and "unwelcome" exchanges with company personnel, including her supervisor, and at least one of the above-referenced comments (i.e., the statement that Plaintiff might be too old for marriage) could be understood as a remark about her gender.

The chair incident, moreover, went beyond mere teasing. Plaintiff fell to the ground and was physically injured. ECF No. 1-2 at 4. If taken as true, a reasonable person might perceive this as abusive, as it was both physically threatening and humiliating, and it altered her ability to do her job because her injury required her to take medical leave. Afterall, "[a] single 'incident' of harassment [] can support a claim of hostile work environment because 'the frequency of the discriminatory conduct' is only one factor in the analysis. [] Conduct is actionable if it is either 'sufficiently severe or pervasive.'"

16

20-CV-0530-GPC

1    *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (internal

2    citations omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

3         In the context of the other comments alleged in the Complaint and Exhibit,

4    including her supervisor's allegedly preferential treatment of a male employee with

5    respect to office equipment, travel vouchers, and workers' compensation, ECF No. 1-2 at

6    2–5, Plaintiff's claim of a hostile work environment is sufficient to survive the Court's

7    *sua sponte* review.

8              **3.     Retaliation.**

9         The prima facie case for a claim of retaliation may established by showing each of

10   the following: (1) that the employee engaged in protected activity, (2) that the employer

11   subsequently took a materially adverse employment action, and (3) that the adverse

12   action was causally connected to the protected action. *Brooks v. City of San Mateo*, 229

13   F.3d 917, 928 (9th Cir. 2000). Courts generally analyze retaliation claims under the

14   *McDonnell Douglas* test. *See McDonnell Douglas*, 411 U.S. at 792. For the purposes of

15   proving retaliation, "an action is cognizable as an adverse employment action if it is

16   reasonably likely to deter employees from engaging in protected activity." *Ray v.*

17   *Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000).

18        Plaintiff asserts that, after she filed her EEO complaint in February of 2012, she

19   "experienced workplace retaliation from [her] immediate work supervisors" in the form

20   of leave restriction. ECF No. 1 at 3. The restriction letter had the effect of preventing

21   Plaintiff from taking annual and sick leave without first obtaining a medical certificate or

22   by scheduling it (and obtaining approval for it) in advance. ECF No. 1-2 at 67–70.

23   Plaintiff alleges that, as a result of the letter, she was "denied most medical leave." ECF

24   No. 1 at 3. Plaintiff also alleges that the letter contributed to her being put on "AWOL

25   status" (i.e., "leave without pay"). *Id.* The Court finds that these allegations are sufficient,

26   for the purposes of its *sua sponte* review, to demonstrate an adverse employment action.

27   Afterall, the Ninth Circuit has already held that the elimination of flexible policies after a

28

20-CV-0530-GPC

plaintiff has filed a complaint is an adverse employment action for purposes of proving retaliation. *See Ray*, 217 F.3d at 1243.

In addition, the allegations are sufficient to infer causation. Plaintiff's allegations are based on an "erroneous leave restriction" that was issued less than a year after she filed her Complaint.[4] ECF No. 1 at 2. And, Plaintiff alleges that the retaliation was preceded by her supervisors' prior efforts to "target[] her for anything they could sanction." ECF No. 1 at 3. Consequently, based on the timing of the alleged retaliation, and her supervisors' alleged conduct, the Court can reasonably infer causation at this stage. *See Ray*, 217 F.3d at 1244 (causation may be inferred from "proximity in time").

Accordingly, the Court concludes that the Complaint and Exhibit allege sufficient facts to support a reasonable inference that the Plaintiff was subjected to retaliation for the purpose of the Court's *sua sponte* review.

**IV.    Analysis of Motion to Appoint Counsel.**

As noted above, the Court considers three factors in determining whether to appoint counsel to a pro se litigant: "(1) the plaintiff's financial resources; (2) the efforts made by the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's claim." *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416–17 (9th Cir. 1994) (quotation omitted). Plaintiff must also show why her case presents "exceptional circumstances" meriting the appointment of counsel. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). For the reasons that follow, the Court concludes that Plaintiff has not demonstrated "exceptional circumstances."

First, a lesser showing of indigency is required to satisfy the test for appointment of counsel than to obtain leave to proceed IFP. *See Bradshaw v. Zoological Soc. of San*

---

[4] Plaintiff's Complaint alleges that the leave restriction was date December 6, 2013. ECF No. 1 at 2. The restriction notice in the record is dated February 28, 2013. ECF No. 1-2 at 67. The Court finds Plaintiff's allegation to be an immaterial scrivener's error.

20-CV-0530-GPC

*Diego,* 662 F.2d 1301, 1319 (9th Cir. 1981). Consequently, because Plaintiff made a sufficient showing of indigency to be granted leave to proceed IFP, Plaintiff's showing will also suffice as to the motion for counsel.

Second, Plaintiff has not made "a reasonably diligent effort under the circumstances to obtain counsel." *Caston*, 556 F.2d at 1309. Plaintiff was initially represented by an attorney who has since retired. ECF No. 2 at 4. In her efforts to obtain counsel, Plaintiff has contacted at least three different attorneys in the area who are unavailable or too costly. *Id.* at 3. She has also made "calls" to other attorneys but does not specify to whom or why they declined to take her case. *Id.* at 4. Because Plaintiff has relatively few resources, it seems unlikely she would have successfully retained counsel had she kept searching. Nonetheless, "greater efforts could be made." *Williams v. 24 Hour Fitness USA, Inc.*, No. CIV. 14-00560-BMK, 2014 WL 7404604, at *3 (D. Haw. Dec. 30, 2014).

Third, the Court must consider the merit of the Plaintiff's claim. In deciding whether Plaintiff's claim has some merit, "the EEOC determination regarding 'reasonable cause' should be given appropriate weight [.]" *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1319–20 (9th Cir. 1981). Here, the EEOC determined that the information obtained through their investigation did not establish a violation of law. Thus, although Plaintiff pleads sufficient evidence to survive *sua sponte* review, likelihood of success on the merits is unclear.

Lastly, Plaintiff does not show that "exceptional circumstances" exist to justify appointment of counsel. *See Palmer*, 560 F.3d at 970 (9th Cir. 2009) (citation omitted); *cf. Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004) (treating as "exceptional" a complex *Bivens* matter where an individual was incarcerated on noncriminal charges and confined for seven years). And, as Plaintiff's complaint is sufficient to survive *sua sponte* review, it appears that Plaintiff has an adequate grasp of the facts supporting her case as well as the legal issues involved to proceed without

20-CV-0530-GPC

appointed counsel for the time being. *See Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Therefore, the Court thus **DENIES** Plaintiff's request for the appointment of counsel without prejudice.

**V.     Conclusion**

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to proceed IFP. Plaintiff has adequately demonstrated indigence and Plaintiff's allegations of employment discrimination, a hostile work environment, and retaliation are sufficient to survive dismissal at this stage. Plaintiff's request for appointment of counsel is **DENIED**.

**IT IS SO ORDERED**.

Dated:  September 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge

20-CV-0530-GPC